**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

SBY AMERICA, INC.,

Plaintiff, Case No. 1:26-cv-01713

v. Hon.
M SOLUTION KOREA CO. LTD.,

Defendant.

---

THE PRIVATE FIRM PLLC
Reese Serra, Esq. (P74482)
Brian D. Harrison (P58513)
Attorneys for Plaintiff
125 E Third St, Ste. 100
Rochester, MI 48307
(248) 781-4501
info@thefirm.net

---

# PLAINTIFF'S EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND BRIEF IN SUPPORT

---

NOW COMES Plaintiff SBY America, Inc. ("SBY America" or "Plaintiff"), by and through its counsel, The Private Firm PLLC, and having filed its Verified Complaint, hereby moves this Court, pursuant to Fed. R. Civ. P. 65(b) and W.D. Mich. LCivR 65.1, for an emergency ex parte temporary restraining order enjoining Defendant M Solution Korea Co., Ltd. ("M Solution Korea" or "Defendant") from transferring, misappropriating, encumbering, concealing, or otherwise disposing of any assets, funds, or property wherever located in the United States pending resolution of this action.

## TABLE OF CONTENTS

**INTRODUCTION**........................................................................................................8
**STATEMENT OF FACTS**...........................................................................................10
**LEGAL STANDARD** .................................................................................................11
**ARGUMENT**................................................................................................................12

I. SBY America Is Overwhelmingly Likely to Succeed on the Merits Because Defendant, as Statutory Trustee Under the MBTFA, Received the Trust Funds, Paid No One, and Diverted the Trust Corpus.........................................................................12

A. The MBTFA Imposes a Statutory Trust and Fiduciary Duty the Moment a Contractor Is Paid. ...........................................................................12

B. Each Element of the MBTFA Civil Claim Is Conclusively Established on the Face of the Verified Complaint..........................................................13

C. Michigan Law Presumes Misappropriation From the Combination of Payment Received and Subcontractor Unpaid, a Presumption Defendant Cannot Possibly Rebut ..............................................................................................14

D. M Solution Korea Is Personally Liable Under the MBTFA as the Controlling Principal of Its Domestic Instrumentality…………………………………...15

E. Plaintiff's MBTFA Trust Interest Is the Quintessential Equitable Interest That Grupo Mexicano Preserves, Not the Money-Damages Claim Grupo Mexicano Forbids…………………………………………………………………...16

E. In the Alternative, Plaintiff Will Prevail on Its Breach-of-Contract Claim…..17

II. SBY America Will Suffer Irreparable Harm Absent Immediate Relief Because Defendant Is Dissipating the Very Trust Property in Which Plaintiff Holds Equitable Title .............18

III. The Balance of Equities Tips Decisively in Plaintiff's Favor ........................................19

IV. The Public Interest Strongly Favors the Requested Relief............................................20

V. Security Under Rule 65(c) Should Be Nominal..............................................................20

**CONCLUSION** .........................................................................................................21
**CERTIFICATE OF SERVICE** ...................................................................................23

# TABLE OF AUTHORITIES

## Cases

**Astro Bldg. Supplies v. Slavik,**
433 B.R. 651, (E.D. Mich. 2010)....................13

**Bailey v. Callaghan**,
715 F.3d 956 (6th Cir. 2013) ....................12

**Basicomputer Corp. v. Scott**,
973 F.2d 507 (6th Cir. 1992) ....................18,19

**B.F. Farnell Co. v. Monahan**,
377 Mich. 552, 141 N.W.2d 58 (1966)....................13

**BC Tile & Marble Co. v. Multi Building Co.**,
288 Mich. App. 576, 794 N.W.2d 76 (2010)....................9,15

**Carlisle Cashway, Inc. v. Johnson (In re Johnson)**,
691 F.2d 249 (6th Cir. 1982) ....................9

**DiPonio Constr. Co. v. Rosati Masonry Co.,**
246 Mich. App. 43, 631 N.W.2d 59 (2001)....................13,14

**Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.**,
527 U.S. 308 (1999)....................9,16

**Hall v. Edgewood Partners Ins. Ctr., Inc.**,
878 F.3d 524 (6th Cir. 2017) ....................12

**Hunter v. Hamilton Cnty. Bd. of Elections**,
635 F.3d 219 (6th Cir. 2011) ....................12

**In re Eagle-Picher Indus., Inc.**,
963 F.2d 855 (6th Cir. 1992) ....................12

**(In re Patel) Patel v. Shamrock Floorcovering Servs.,**
565 F.3d 963 (6th Cir. 2009) ....................................................................13

**Koppers Co. v. Garling & Langlois,**
594 F.2d 1094 (6th Cir. 1979) ..................................................................20

**Livonia Building Materials Co. v. Harrison Constr. Co.**,
276 Mich. App. 514, 742 N.W.2d 140 (2007)...........................................9,15,19

**Miller-Davis Co. v. Ahrens Constr., Inc.**,
495 Mich. 161, 848 N.W.2d 95 (2014)...............................................................17

**Neveux v. Webcraft Techs., Inc.**,
921 F. Supp. 1568 (E.D. Mich. 1996) ...............................................................20

**People v. Brown,**
239 Mich. App. 735, 610 N.W.2d 234 (2000)....................................................15

**People v. Whipple,**
202 Mich. App. 428, 509 N.W.2d 837 (1993)................................................9,15

**RECO Equip., Inc. v. Wilson**,
No. 20-4312, 2021 WL 5013816 (6th Cir. Oct. 28, 2021) ................................18

**Selby v. Ford Motor Co.,**
590 F.2d 642 (6th Cir. 1979) ............................................................................17

**Starbucks Corp. v. McKinney**,
602 U.S. 339 (2024).............................................................................................12

**Summit County Democratic Cent. & Exec. Comm. v. Blackwell**,
388 F.3d 547, 2004 U.S. App. 2267……………………………………………11

**USACO Coal Co. v. Carbomin Energy, Inc.**,
689 F.2d 94 (6th Cir. 1982) .......................................................................9,17,18

**Weathervane Window, Inc. v. White Lake Constr. Co.,**
192 Mich. App. 316, 480 N.W.2d 337 (1991).............................................13,17

**Winter v. Natural Resources Defense Council, Inc.**,

555 U.S. 7 (2008)............................................................................................12

**Williams-Yulee v. Fla. Bar,**
575 U.S. 433, 135 S. Ct. 1656 (2015)..................................................................20

<u>**Statutes and Rules**</u>

**Fed. R. Civ. P. 65(b)**.........................................................................................1,11
**Fed. R. Civ. P. 65(c)** .........................................................................................20
**W.D. Mich. LCivR 65.1** .........................................................................................1
**MCL 570.151 *et Seq*.** ......................................................................................8,10,12
**MCL 570.152** ......................................................................................8,10,12

## STATEMENT OF ISSUE PRESENTED

I. Whether this Court should immediately restrain Defendant M Solution Korea Co., Ltd., a foreign contractor that, through its domestic instrumentality M Solution America, Inc., received in excess of $4.5 million in construction payments long ago, became statutory trustee of those payments under the Michigan Builders Trust Fund Act, MCL 570.151 et seq., paid not one dollar to Plaintiff or, on information and belief, to any other subcontractor or supplier on the projects, and is now actively transferring the misappropriated trust corpus to the Republic of Korea and to affiliated entities beyond this Court's reach.

Plaintiff's answer: Yes.

This Court should answer: Yes.

This case presents a textbook violation of the Michigan Builders Trust Fund Act ("MBTFA"), MCL 570.151 et seq. The project owners paid 4.5 million to Defendant's domestic instrumentality, M Solution America, Inc. ("M Solution America"), in full and long ago for the very labor, materials, goods, services, and equipment that SBY America furnished. Upon receipt by M Solution America, Inc., those funds became a statutory trust, and Defendant became trustee, for the benefit of SBY America and other subcontractors and suppliers. Defendant has paid no one. Defendant has retained the trust corpus, used it for its own purposes, and is now actively dissipating the trust property by wiring funds to the Republic of Korea and to affiliated entities beyond the reach of this Court. SBY America's unpaid balance alone exceeds $4,532,795.54. (Verified Compl., Exs. B, E, F.)

Because the MBTFA imposes an express statutory trust and a fiduciary duty on Defendant, Plaintiff is the beneficial owner of identifiable trust property. The Sixth Circuit has long recognized that, where a plaintiff holds an equitable interest in specific funds wrongfully diverted by a fiduciary, a federal court has full equitable power to enter an asset-preservation injunction to protect the trust res from dissipation.

SBY America relies on the authorities and arguments set forth in this Motion and Brief in Support, as well as the verified allegations of the Verified Complaint and its exhibits.

WHEREFORE, SBY America respectfully requests that this Honorable Court enter an ex parte temporary restraining order restraining and enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from directly or indirectly transferring, misappropriating, encumbering, concealing, removing, or otherwise disposing of any assets, funds, or property wherever located in the United States, pending further order of this Court.

Respectfully submitted,

THE PRIVATE FIRM PLLC

Dated: June 4, 2026

/s/ Reese Serra

Reese Serra, Esq. (P74482)
Brian D. Harrison (P58513)
Attorneys for Plaintiff
125 E Third St, Ste. 100
Rochester, MI 48307
(248) 781-4501
info@thefirm.net

**BRIEF IN SUPPORT**

**INTRODUCTION**

This is, at its core, a trust-fund case. The Michigan Legislature enacted the MBTFA during the construction-industry collapse of the early 1930s precisely to prevent the conduct at issue here: a contractor that takes payment for work performed by its subcontractors and suppliers, fails to pay them, and dissipates the entrusted funds.

Plaintiff SBY America furnished more than $4.5 million worth of goods, services, labor, and equipment at project sites in Michigan, Ohio, Indiana, and Georgia pursuant to written purchase orders with M Solution America, the domestic instrumentality of Defendant M Solution Korea. (Verified Compl., Ex. B, F.) The project owners, LG Energy Solution Michigan, Inc., HL-GA Battery Company, LLC, and L-H Battery Company, have each confirmed in writing that they fully paid M Solution America for that work long before this Motion was filed. (Verified Compl., Exs. E.) Upon receipt of those payments, an MBTFA statutory trust attached, M Solution America (and through it, M Solution Korea) became trustee, and SBY America became the intended beneficiary. MCL 570.151; MCL 570.152.

Defendant has paid SBY America nothing. Upon information and belief, Defendant has paid no other subcontractor or supplier either. The trust funds have not sat unused. They have been redirected. Defendant has been moving the trust corpus offshore, to M Solution Korea's Republic of Korea accounts and to affiliated entities, while simultaneously winding down M Solution America's domestic operations. Each day that passes is another day in which additional trust property is placed beyond the reach of this Court and beyond the reach of the very subcontractors and suppliers the MBTFA was enacted to protect.

The MBTFA does not merely create a civil cause of action. Misappropriation of MBTFA trust funds is a felony. MCL 570.152; MCL 570.153. The Sixth Circuit has held, on direct review

of Michigan law, that an MBTFA violation is a defalcation by a fiduciary that renders the resulting debt nondischargeable in bankruptcy. *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-55 (6th Cir. 1982). The Michigan courts have likewise held that the MBTFA creates a true statutory trust, that the subcontractor or supplier holds equitable title to the trust property, and that a contractor who is paid by the owner and then fails to pay those for whose benefit the trust was created may be presumed to have misappropriated the trust funds. *People v. Whipple*, 202 Mich. App. 428, 435-36, 509 N.W.2d 837 (1993); *BC Tile & Marble Co. v. Multi Building Co.*, 288 Mich. App. 576, 590, 794 N.W.2d 76 (2010); *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 276 Mich. App. 514, 522-24, 742 N.W.2d 140 (2007).

Because Plaintiff asserts an equitable interest in identifiable statutory trust property, the rule of *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), does not bar relief. The Supreme Court in *Grupo Mexicano* took pains to preserve the federal court's historic equity jurisdiction to issue interim relief in cases involving fiduciary breach and equitable claims to specific property. *Id.* at 322-26. The Sixth Circuit has repeatedly applied that equity power, both before and after *Grupo Mexicano*, to preserve trust property in the hands of a faithless fiduciary. *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97-98 (6th Cir. 1982).

This Court should restrain Defendant from disposing of any assets in the United States until the trust property can be accounted for and adjudicated. The relief sought is modest. It preserves the status quo. It freezes only what was supposed to be frozen in the first instance by operation of Michigan law.

## STATEMENT OF FACTS

### A. **The Projects and SBY America's Performance.**

SBY America furnished substantial goods, services, labor, and equipment at project sites in Michigan, Ohio, Indiana, and Georgia pursuant to written purchase orders with M Solution America. The projects were performed for LG CNS, with LG Energy Solution serving as primary project owner and M Solution Korea serving as the LG CNS subcontractor. (Verified Compl., Exs. A, F, G, H.) The total amount owed to SBY America exceeds $4,532,795.54. (Verified Compl., Ex. B.) M Solution America's own counsel has acknowledged, through communications referenced in the Verified Complaint, that the amount owed is "below $1.9 million," yet Defendant has paid not even that admitted sum. (Verified Compl., Exs. D.)

### B. **The Project Owners Paid Defendant in Full, and Did So Long Ago.**

The project owners have each confirmed in writing that they fully paid M Solution America for the very work SBY America performed. (Verified Compl., Exs. E.) Those payments were made weeks and months before this Motion was filed. Upon receipt, the funds became statutory trust property under MCL 570.151, held by Defendant as trustee for the benefit of SBY America and the other subcontractors, materialmen, and laborers engaged on the projects.

### C. **Defendant Paid No One and Used the Trust Funds for Its Own Purposes.**

Despite holding the trust corpus for an extended period, Defendant has not paid a dollar to SBY America. Upon information and belief, Defendant has likewise failed to pay other subcontractors and suppliers who furnished labor and materials on the same projects. Defendant has instead retained the funds, used them to support its own operations, and, most critically, redirected them across the Pacific to M Solution Korea's accounts in the Republic of Korea and to affiliated entities. (Verified Compl. ¶¶ 18, 36-39, 119; Exs. E, F, D.)

**D. Defendant Is Winding Down Its Domestic Operations and Stripping Its Assets.**

Upon information and belief, Defendant is now actively transferring, misappropriating, concealing, and encumbering assets throughout the United States. Specifically: (a) Defendant has been diverting trust funds received from project owners, funds specifically designated for payment to SBY America, to accounts in the Republic of Korea and to other jurisdictions beyond the reach of this Court; (b) M Solution Korea has directed M Solution America to wind down its domestic operations and transfer remaining assets, contracts, and business opportunities to M Solution Korea, affiliated entities, and individual principals; (c) Defendant has ongoing funded projects in Arizona and other locations throughout the United States and is diverting revenues from those projects rather than satisfying its existing obligations to Plaintiff; (d) Defendant maintains bank accounts, receivables, and other assets in multiple states, including Michigan, Georgia, Ohio, Indiana, and Arizona, all of which are at risk of misappropriation; and (e) M Solution Korea exercises pervasive operational and financial control over M Solution America, facilitating the rapid movement of assets beyond domestic reach.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(b)(1), a court may issue a temporary restraining order without notice to the adverse party if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

The Court applies the same four-factor standard to a TRO as to a preliminary injunction. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). The court must balance: (1) whether the movant has a likelihood of success on the merits; (2)

whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *Bailey v. Callaghan*, 715 F.3d 956, 958 (6th Cir. 2013); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011). The Supreme Court has reaffirmed that this traditional four-factor test governs all federal preliminary injunctions. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The factors are not rigid prerequisites. They "simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). A particularly strong showing on one factor may compensate for a weaker showing on another. *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017).

## ARGUMENT

### I. SBY America Is Overwhelmingly Likely to Succeed on the Merits Because Defendant, as Statutory Trustee Under the MBTFA, Received the Trust Funds, Paid No One, and Diverted the Trust Corpus.

#### A. The MBTFA Imposes a Statutory Trust and Fiduciary Duty the Moment a Contractor Is Paid.

MCL 570.151 provides that "the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes." MCL 570.152 makes appropriation of those trust funds for any purpose other than payment to the intended beneficiaries a felony.

The Michigan Supreme Court has recognized the MBTFA as a remedial Depression-era statute enacted in direct response to widespread diversion of construction payments by general contractors, leaving subcontractors and suppliers unpaid and without effective remedy. *DiPonio Construction Co., Inc. v. Rosati Masonry Co*., Inc., 246 Mich. App. 43, 631 N.W.2d 59, 63 (2001) The Court has further confirmed that the Act provides a civil cause of action and creates a genuine trust, with all the fiduciary incidents that attach. *B.F. Farnell Co. v. Monahan*, 377 Mich. 552, 555-56, 141 N.W.2d 58 (1966).

The courts have spoken directly to the fiduciary character of the MBTFA. In the case of *In re Patel*, 565 F.3d 963 (6th Cir. 2009) the court held that held that MBTFA contractors are fiduciaries to their subcontractors, with the fiduciary relationship arising when monies are paid and continuing until all trust beneficiaries are paid. In *Astro Building Supplies, Inc. v. Slavik*, 433 B.R. 651 (E.D. Mich. 2010), explicitly held that violations of the MBTFA constitute defalcation while acting in a fiduciary capacity for purposes of federal bankruptcy law's exception to discharge. That is binding federal precedent on the same statutory trust at issue here.

The Michigan Court of Appeals has explained that under the MBTFA, the contractor holds legal title to trust funds while subcontractors and suppliers hold equitable title as beneficiaries *Weathervane Window, Inc. v. White Lake Const. Co*., 192 Mich. App. 316 (1991). This equitable title gives beneficiaries priority over the contractor's general creditors, consistent with traditional trust principles. *Id.*

### B. <u>Each Element of the MBTFA Civil Claim Is Conclusively Established on the Face of the Verified Complaint</u>.

Michigan courts apply a five-element test for a civil MBTFA claim: (1) the defendant is a contractor or subcontractor engaged in the building construction industry; (2) a person paid the

contractor for labor or materials provided on a construction project; (3) the contractor retained or used those funds, or any part of them; (4) for any purpose other than first paying laborers, subcontractors, and materialmen; (5) who were engaged by the contractor to perform labor or furnish material for the specific project. *DiPonio Constr. Co. v. Rosati Masonry Co.*, 246 Mich. App. 43, 48-49, 631 N.W.2d 59 (2001). Here, every element is met.

First, Defendant, through its domestic instrumentality M Solution America, is unquestionably a contractor engaged in the building construction industry. (Verified Compl. ¶¶ 2-3, 10-11, 13.)

Second, the project owners paid Defendant for the labor, materials, equipment, and services SBY America provided. (Verified Compl., Exs. E.)

Third, Defendant retained those funds, in their entirety, and used them. (Verified Compl. ¶¶ 22, 35, 39, 118-119; Ex. E, F.)

Fourth, Defendant used the funds for purposes other than first paying SBY America. Defendant paid SBY America nothing. Upon information and belief, Defendant paid no other subcontractor or supplier either. Defendant instead transferred and is continuing to transfer the trust corpus to the Republic of Korea and to affiliated entities. (Verified Compl. ¶¶ 18, 36-40, 119.)

Fifth, SBY America is precisely the type of person whose engagement on the projects entitled it to the protections of the MBTFA. (Verified Compl., Exs. A, B.)

### C. Michigan Law Presumes Misappropriation From the Combination of Payment Received and Subcontractor Unpaid, a Presumption Defendant Cannot Possibly Rebut.

Michigan courts apply a powerful evidentiary presumption that controls this case. A "reasonable inference of appropriation arises from the payment of construction funds to a contractor and the subsequent failure of the contractor to pay laborers, subcontractors,

materialmen, or others entitled to payment." *BC Tile & Marble Co. v. Multi Building Co.*, 288 Mich. App. 576, 590, 794 N.W.2d 76 (2010); *People v. Whipple*, 202 Mich. App. 428, 435-36, 509 N.W.2d 837 (1993). The presumption flows from the ordinary operation of the statutory trust: where the trust is funded and the beneficiary is left unpaid, the trustee's misuse of the corpus is the natural inference.

Defendant has no answer to this presumption. The Michigan Court of Appeals has squarely held that the "general assertion that there was not enough money 'to go around' is not sufficient to rebut the presumption of misappropriation," and that economic difficulty, poor business decisions, or competing financial pressures do not excuse the MBTFA fiduciary violation. *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 276 Mich. App. 514, 522-24, 742 N.W.2d 140 (2007). The trust is the trust. *Id.* Once the contractor is paid by the owner, the contractor must pay its subs and materialmen first. Period.

Here, the inference is not just reasonable; it is overwhelming. Defendant received in excess of $4.5 million in trust funds. Defendant paid SBY America zero. Defendant has paid no other subcontractor or supplier, on information and belief, for the work performed on these projects. Defendant has been quietly moving the trust corpus offshore. Those facts, drawn from the Verified Complaint and its exhibits, demonstrate a textbook MBTFA violation.

### D. <u>M Solution Korea Is Personally Liable Under the MBTFA as the Controlling Principal of Its Domestic Instrumentality</u>.

Defendant cannot hide behind the corporate veil of M Solution America. The MBTFA imposes personal liability on the officers and principals who control the disposition of trust funds, regardless of whether the named payee is a corporation. *People v. Brown*, 239 Mich. App. 735, 740-41, 610 N.W.2d 234 (2000); *BC Tile*, 288 Mich. App. at 590-92 (officer of a contractor may

be personally liable under the MBTFA even absent proof that the officer personally received or used the funds, when the officer controlled the contractor's disbursements). The MBTFA looks past corporate formalities to those who actually direct the diversion.

M Solution Korea directs and controls M Solution America in every respect relevant to this Motion: it shares common ownership, officers, directors, offices, and personnel; it commingles funds and maintains intermingled books; it dominates contracting and project decisions; and M Solution America is financially dependent on M Solution Korea. (Verified Compl. ¶¶ 12-17, 24-25.) The trust funds flowed through M Solution America to and at the direction of M Solution Korea. Defendant is the trustee. Defendant is the misappropriator. Defendant is liable.

### E. **Plaintiff's MBTFA Trust Interest Is the Quintessential Equitable Interest That Grupo Mexicano Preserves, Not the Money-Damages Claim Grupo Mexicano Forbids.**

Because Plaintiff is the equitable owner of identifiable MBTFA trust property, this Court possesses full traditional equity power to preserve the trust res from dissipation pending adjudication. The Supreme Court in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), held that "prior to entry of money judgment, district court lacked power to issue a preliminary injunction preventing operator from transferring assets in which no lien or equitable interest was claimed." The Court "took explicit care to preserve the federal court's historic equity jurisdiction over fiduciary breaches and equitable claims to specific property" is supported by the Court's analysis. *Id.* This demonstrates the Court's recognition that traditional equitable remedies remain available when a party asserts a recognized equitable interest in specific property, as distinguished from seeking to freeze assets merely to secure a potential money judgment.

The Sixth Circuit has applied that historic equity power directly to facts materially similar to those here. In *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94 (6th Cir. 1982), the Sixth Circuit affirmed a preliminary injunction freezing the defendants' assets where the defendants had misappropriated entrusted funds through breach of fiduciary duty and were transferring assets beyond domestic reach. The court observed that a preliminary injunction "is always appropriate to grant intermediate relief of the same character as that which may be granted finally," and held that neither attachment nor lis pendens addressed the court's concern that defendants would conceal and remove assets from the country. *Id.* at 97-98.

The Michigan trust authorities cement this Court's authority. *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir. 1979), holds that MBTFA trust funds are not the property of the general contractor and that the subcontractor-beneficiary holds equitable title from the moment the owner pays, and that these funds are shielded from general creditor claims in bankruptcy. *Weathervane Window, Inc. v. White Lake Constr. Co.*, 192 Mich. App. 316, 480 N.W.2d 337 (1991), holds that funds owed to a defaulting general contractor are impressed with a trust under the MBTFA for the benefit of all subcontractors and materialmen. Plaintiff is the equitable owner of those funds. The Court has full power to preserve them.

**F. <u>In the Alternative, Plaintiff Will Prevail on Its Breach-of-Contract Claim</u>.**

Independently of the MBTFA, Plaintiff is overwhelmingly likely to succeed on its breach-of-contract claim. The elements under Michigan law are: (1) a contract existed; (2) the other party breached its terms; and (3) damages resulted. *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178, 848 N.W.2d 95 (2014). The material facts are largely undisputed: valid contracts existed between SBY America and Defendant (acting through M Solution America), evidenced by written purchase orders and change orders, many of which were signed by M Solution Korea's own

personnel; SBY America fully performed; Defendant failed to pay; and M Solution America has itself acknowledged owing approximately $1.9 million to SBY America. The total unpaid amount exceeds $4,532,795.54. (Verified Compl., Exs. A, B, G, F.) The project owners' written confirmations of full payment eliminate any defense that non-payment was caused by the owners' default. (Verified Compl., Exs. E.)

## II. **<u>SBY America Will Suffer Irreparable Harm Absent Immediate Relief Because Defendant Is Dissipating the Very Trust Property in Which Plaintiff Holds Equitable Title.</u>**

Where, as here, equitable claims give the plaintiff a cognizable interest in specific property, the ongoing dissipation of that property is the very paradigm of irreparable harm. The remedy Plaintiff seeks, a constructive trust and accounting over identifiable MBTFA trust funds, is destroyed the moment the funds are placed beyond the Court's reach. *USACO Coal*, 689 F.2d at 97-98. A post-judgment damages award against an offshore corporate defendant whose American assets have been stripped is no remedy at all.

Defendant is a foreign corporation headquartered in the Republic of Korea. Funds are being transferred to Korean accounts and affiliated entities. Recognition and enforcement of a United States money judgment in South Korea is not automatic: it requires satisfaction of stringent conditions, including that the judgment not violate Korean public policy. The time, expense, and uncertainty of attempting enforcement abroad against a defendant that has already demonstrated a willingness to misappropriate trust property render any later money judgment effectively uncollectible. Where collection on a money judgment is the only available remedy and that remedy is uncertain, irreparable harm is established. *Cf. RECO Equip., Inc. v. Wilson*, No. 20-4312, 2021 WL 5013816, at *4 (6th Cir. Oct. 28, 2021) (irreparable harm where the loss is difficult to calculate or recover); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).

Each day that passes without a restraining order is another day in which additional trust property is moved offshore and another day in which Plaintiff's equitable interest is further extinguished.

SBY America has also suffered substantial damage to its business operations, goodwill, and ability to fund ongoing projects because of Defendant's refusal to remit the trust funds. Loss of customer goodwill, damage to competitive position, and risk to business reputation are recognized forms of irreparable harm. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992)

## **III. The Balance of Equities Tips Decisively in Plaintiff's Favor.**

The balance of hardships tips decidedly in Plaintiff's favor. Here, Plaintiff's showing on each factor is overwhelming.

Plaintiff seeks only to preserve the status quo. A TRO would not require Defendant to pay any amount or to surrender any property. It would merely require Defendant to do what Michigan law has required of it since the moment it received the trust funds: not misappropriate them. The burden on Defendant from such an order is zero, because Defendant has no lawful right to dissipate trust property in the first place. *Livonia Bldg. Materials Co.*, 276 Mich. App. at 522-24 (economic considerations do not excuse MBTFA trust obligations).

Defendant's only "injury" from the requested TRO is the loss of its ability to continue committing felonious conduct under MCL 570.152 and to continue stripping its domestic assets in anticipation of judgment. That is not an equity. By contrast, every day without an order, additional trust property is placed beyond the reach of this Court, and Plaintiff's equitable remedy is foreclosed. The equities are not close.

## IV. The Public Interest Strongly Favors the Requested Relief.

The public interest is served by the enforcement of contracts, *Neveux v. Webcraft Techs., Inc.*, 921 F. Supp. 1568, 1573 (E.D. Mich. 1996), and by the protection of the integrity of the judicial process, *Williams-Yulee v. Florida Bar,* 575 U S 433 (2015)(the U.S. Supreme Court recognizing that public perception of judicial integrity is "a state interest of the highest order").

The public interest in this case, however, is far stronger and far more specific. The Michigan Legislature enacted the MBTFA precisely to protect owners, in addition to subcontractors like SBY America, from the diversion of construction payments by general contractors. *Koppers Co., Inc. v. Garling & Langlois*, 594 F.2d 1094 (1979). The Legislature backed the statutory trust with criminal penalties, a clear expression of the strength of the public policy. MCL 570.152; MCL 570.153.

Granting the requested TRO would vindicate the precise legislative policy embodied in the MBTFA: deterring the diversion of construction trust funds and ensuring that the proceeds of construction projects reach the subcontractors and suppliers whose labor and materials made those projects possible. The public interest also demands that this Court act to prevent a foreign corporation from stripping its domestic assets and evading legitimate trust obligations to American subcontractors and suppliers. The integrity of construction payment systems, on which thousands of subcontractors and suppliers across the State of Michigan depend, requires that statutory protections like the MBTFA be given full force and effect.

## V. Security Under Rule 65(c) Should Be Nominal.

Plaintiff is prepared to post a bond or other security in an amount the Court deems appropriate pursuant to Federal Rule of Civil Procedure 65(c). Plaintiff respectfully requests that the Court set the bond at a nominal amount. The requested relief merely preserves the status quo.

It imposes no affirmative obligation on Defendant beyond refraining from dissipating trust property that Defendant has no lawful right to dissipate in the first place. And Defendant has, through counsel, already acknowledged owing substantial sums to Plaintiff. (Verified Compl., Exs. D.)

## CONCLUSION

Defendant is a statutory trustee that took the trust corpus, paid no one, and is now moving the trust property offshore. The Michigan Legislature said this kind of conduct is a felony. The Michigan Supreme Court said the resulting trust is a true trust with full fiduciary incidents. The Sixth Circuit said the resulting debt is the kind of fiduciary defalcation that survives even bankruptcy. The federal courts have full historic equity authority to preserve the trust res while this Court adjudicates the merits.

For the foregoing reasons, SBY America respectfully requests that this Honorable Court grant this Motion and enter an ex parte temporary restraining order in the form of the attached Proposed Order, restraining and enjoining Defendant from transferring, misappropriating, encumbering, concealing, or otherwise disposing of any assets, funds, or property wherever located in the United States, pending further order of this Court.

Respectfully submitted,

THE PRIVATE FIRM PLLC

Dated: June 4, 2026

/s/ Reese Serra

Reese Serra, Esq. (P74482)
Brian D. Harrison (P58513)
Attorneys for Plaintiff
125 E Third St, Ste. 100
Rochester, MI 48307
(248) 781-4501

info@thefirm.net

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth above, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I certify that a copy of this Motion and Brief in Support and the Verified Complaint have been served via e-mail to counsel for Defendant. Undersigned counsel further certifies that concurrence in the relief requested was sought but was not obtained. No additional efforts to provide notice have been made because such notice would defeat the very purpose of the relief sought, as Defendant is actively transferring assets to accounts in the Republic of Korea and to affiliated entities beyond this Court's jurisdiction. Plaintiff will promptly serve Defendant with all filed papers immediately upon entry of a Temporary Restraining Order, or as otherwise directed by the Court.

/s/ Reese Serra
Reese Serra (P74482)

## WORD COUNT CERTIFICATION

The undersigned hereby certifies that the above Brief in Support of Plaintiff's Ex Parte Motion for Temporary Restraining Order complies with Local Rules 7.3, and that the word count of this Brief in Support is 4,064, including headers but not including the table of contents, table of authorities, statement of issues present, or this certification.

/s/ Reese Serra
Reese Serra (P74482)